**UNITED STATES of America, Appellee,**

v.

**Antonio ULLOA and Adolpho Transito, Defendants–Appellants.**

Nos. 1080, 1157.
Docket Nos. 88–1401, 88–1517.

United States Court of Appeals,
Second Circuit.

Argued May 4, 1989.

Decided Aug. 9, 1989.

**42**

Barry Weinstein, New York City (Mordkofsky, Goldstein & Weinstein, on the brief), for defendant-appellant Ulloa.

Anthony Suarez, New York City (Suarez & Canals, on the brief), for defendant-appellant Transito.

Kerri Martin Bartlett, New York City (Benito Romano, U.S. Atty., Robert W. Ray, Daniel C. Richman, Asst. U.S. Attys., New York City, on the brief), for U.S.

Before FEINBERG and NEWMAN, Circuit Judges, and TENNEY, District Judge.*

JON O. NEWMAN, Circuit Judge:

In *United States v. Ronder*, 639 F.2d 931 (2d Cir.1981), this Court set forth the procedure that a trial judge should normally follow in responding to an inquiry from a jury during the course of jury deliberations. On this appeal, we consider primarily whether a new trial is warranted because a trial judge, in the course of responding in open court to a jury's written inquiries, engaged in a colloquy with the jurors in an effort to answer additional questions asked orally by some of the jurors while still seated in the jury box. This issue arises on an appeal by Antonio Ulloa and Adolpho Transito from judgments entered after a jury trial in the District Court for the Southern District of New York (John E. Sprizzo, Judge), convicting them of several counts of conspiring to distribute, distributing, and possessing with intent to distribute, cocaine and heroin. Though we conclude that a colloquy in response to jurors' oral questions poses risks that should prompt a trial judge to proceed with caution, we are satisfied that no prejudice occurred in this case. For the reasons stated below, we affirm.

## Background

Appellants Ulloa and Transito were indicted along with co-defendants Rafael Cruz and José Antonio Herrera, both of whom pled guilty. The evidence at appellants' trial showed that Transito agreed to introduce a government informant to per-

---

* The Honorable Charles H. Tenney of the United States District Court for the Southern District of New York, sitting by designation.

sons who could supply him with drugs. Several months after the initial contact between Transito and the informant, Transito introduced the informant to Cruz. Cruz originally negotiated to sell the informant heroin and provided him with a sample. Eventually, however, the negotiations switched to cocaine, and Herrera became involved as a supplier.

Subsequently, the informant met with Herrera at a grocery store owned by Herrera's brother. They were met there by Ulloa and a juvenile, who carried a plastic bag with the logo "I love New York." Ulloa took the plastic bag and went into the basement of the store with Herrera and the informant. Ulloa took three containers out of the bag and cut one open with a knife to give the informant a sample of the powder it contained. The three then left the bag in the basement and went back upstairs to wait outside the store for the informant's "brother"—a federal agent—to arrive with the money. After about an hour's wait, federal agents converged on the scene and arrested Ulloa and Herrera outside the store. The agents then, without a warrant, entered the store and searched the basement, recovering the "I love New York" bag and another bag nearby that contained two semi-automatic pistols. The contents of the containers in the bag were tested and determined to be cocaine.

Neither defendant moved to suppress the cocaine or the guns before trial, and these items were received in evidence without objection. After the Government presented its case, Judge Sprizzo *sua sponte* questioned the legality of the seizure of the bags, but concluded that the basement search had been a valid "security sweep" during which the cocaine and guns were in "plain view" and were therefore lawfully seized.

Ulloa presented no defense. Transito testified that he had been entrapped. On appeal, Ulloa contends that the cocaine and guns were seized illegally and should have been suppressed. Transito argues that the charge on the predisposition component of entrapment was erroneous because it improperly told the jury that "readiness" was essentially the same as "willingness." Transito also contends that the trial judge's courtroom colloquy with the jurors in the course of responding to their inquiries concerning the instructions was improper and prejudicial.

## Discussion

### 1. Suppression

█ The Federal Rules of Criminal Procedure and our cases make clear that a motion to suppress evidence must be made before trial and that failure to make such a motion constitutes waiver, Fed.R.Crim.P. 12(b)(3), 12(f); *United States v. Mauro*, 507 F.2d 802, 805–07 (2d Cir.1974), *cert. denied*, 420 U.S. 991, 95 S.Ct. 1426, 43 L.Ed.2d 672 (1975), even where, as here, the trial judge considers the issue during trial. *See United States v. Sisca*, 503 F.2d 1337, 1349 (2d Cir.) (citing cases), *cert. denied*, 419 U.S. 1008, 95 S.Ct. 328, 42 L.Ed.2d 283 (1974). Ulloa was on notice prior to trial that the Government intended to introduce the guns and the cocaine in evidence. He has demonstrated no cause for failing to make a suppression motion. The lawfulness of the seizures is therefore not available for consideration on appeal.

### 2. The Jury Instructions

In the principal charge, Judge Sprizzo instructed the jurors on the law of entrapment, telling them that the Government had to prove that the defendant was predisposed, or "ready and willing," to commit the crime before the informant's inducement. After deliberating for about two hours, the jurors sent a note to the judge with a series of questions focusing on the issue of predisposition and, in particular, the concept of "readiness." After discussing the questions with counsel, Judge Sprizzo brought the jurors back into the courtroom and responded to the written questions.

Apparently still troubled, several jurors orally asked new questions on the same issue. Among the questions were:

"Readiness, she wants to know, what do you mean by readiness?"

"There was another question in terms of the issue of entrapment. The sequence of events can be viewed somewhat contiguously—"

"The difficulty is in discovering one's predisposition. How do you know?"

Without seeking the views of counsel as to how the jurors' oral questions should be answered, Judge Sprizzo responded to each question, essentially amplifying his initial charge. After the questions were answered, Transito's counsel said that he did not have "that much of an objection" to the contents of the judge's responses but did express disquiet with what he characterized as the judge's conducting "open deliberations with a jury."

After deliberating for another hour and a half, the jury again sent a note with questions on entrapment. The judge, electing not to seek the views of counsel as to this second set of written questions, brought the jurors into the courtroom and began to answer them. Again, some jurors interjected oral questions, and Judge Sprizzo again responded without pausing to seek the views of counsel. Among this set of oral questions were:

"Does the defendant have to have in his mind before the government approaches him that he is going to go and commit a crime?"

"What if a government agent encountered a person and asked them if they were able to provide him with contacts for narcotics, somebody that was interested in buying drugs asked someone else whether or not they had any contacts, if that person said yes and they would be interested in dealing with him, would that be inducing that person?"

"You did imply that there was a difference between willingness, which I think is not an issue here, and readiness. Can you define readiness with any more specificity?"

To this last question the Judge responded: " 'Ready' implies an open amenability to it. It is not terribly different from 'willing.' The two of them together imply a certain amenability to be involved in illegal conduct." After another hour of deliberations, and another note, which asked only for a brief portion of testimony to be reread, the jury returned guilty verdicts.

■ *Substance of the Responses to the Jury.* Transito faults the District Judge for equating "readiness" and "willingness." He contends that these are two significantly different components of a defendant's predisposition that the Government must prove to overcome a defense of entrapment. In his view, the Government must prove the defendant was not only willing but also ready to commit the crime, in the sense of having the present physical ability to do so.

We find no support for this position in our cases. Although we have consistently approved the phrase "ready and willing" as an appropriate definition of the requisite predisposition, *see United States v. Myers,* 692 F.2d 823, 849 (2d Cir.1982) (citing cases), *cert. denied,* 461 U.S. 961, 103 S.Ct. 2437, 77 L.Ed.2d 1322 (1983), we have never distinguished "readiness" from "willingness." The focus of the entrapment inquiry, once inducement by the Government is established, is on the defendant's state of mind. *See United States v. Williams,* 705 F.2d 603, 618 (2d Cir.1983), *cert. denied,* 464 U.S. 1007, 104 S.Ct. 524, 78 L.Ed.2d 708 (1984); *Myers,* 692 F.2d at 849.

Transito cites cases in which we said that the defendant was "fully prepared to complete the transaction on the very first occasion," *United States v. Miley,* 513 F.2d 1191 (2d Cir.), *cert. denied,* 423 U.S. 842, 96 S.Ct. 74, 46 L.Ed.2d 62 (1975), or "grasped at the opportunity" presented by the Government, *United States v. Greenberg,* 444 F.2d 369 (2d Cir.), *cert. denied,* 404 U.S. 853, 92 S.Ct. 93, 30 L.Ed.2d 93 (1971). In each of these cases, however, we noted the defendant's physical readiness in order to demonstrate why the entrapment defense failed as a matter of law. We did not say that the Government was required to prove readiness in this sense to sustain its burden in proving predisposition.

We therefore find no error in the substance of the District Judge's instruction.

*Procedure Used in Responding to the Jury.* The procedure outlined in *United States v. Ronder, supra,* for responding to jury inquiries consists of four steps: (1) The jury's question should be submitted in writing, (2) the question should be marked as a court exhibit and read into the record, (3) counsel should be afforded an opportunity to suggest appropriate responses, and (4) once the jurors are recalled, the question, if substantive, should be read into the record in their presence. In the instant case, the Government does not overstate the matter in observing that the District Court "did not precisely adhere" to the *Ronder* procedure. Brief for Appellee at 26. In the course of responding to the jurors' written questions, the trial judge repeatedly entertained oral questions and responded to them without seeking the views of counsel as to appropriate responses.

Mindful that trial judges must be permitted some latitude in determining how best to handle jury inquiries, we have accepted substantial compliance with the *Ronder* procedure. *See United States v. Johnpoll,* 739 F.2d 702 (2d Cir.), *cert. denied,* 469 U.S. 1075, 105 S.Ct. 571, 83 L.Ed.2d 511 (1984). In fielding the jurors' oral questions interjected during the course of hearing the answers to their written inquiries, Judge Sprizzo obviously was endeavoring to be helpful to the jury, believing it more expeditious and perhaps more coherent to give his responses on the spot. The course he followed, however, poses risks. A judge engaging in a colloquy with a jury might misinterpret a question or provide an erroneous response. Moreover, an extended colloquy might precipitate disclosure of jury deliberations or even innocently lead the judge into crossing the line between instructing the jurors and participating in their decisionmaking. In addition, immediate responses to oral questions might foreclose the opportunity for counsel to comment on new matters on which they have not previously been heard. Obliging the jurors to submit their questions in writing substantially reduces these risks.

In some circumstances, a juror's oral inquiry, seeking only slight clarification of a judge's response to a prior written inquiry, can safely be answered without requiring a further writing. But a trial judge should proceed with caution and should not hesitate to tell the jurors to listen to the judge's complete response rather than interject questions during the response. Once it appears that the "slight clarification" question is leading to a colloquy, it will normally be prudent for the judge to suggest that the jurors return to the jury room and submit any further inquiry in writing. Frequently, a jury given that advice formulates as a group a more precise and focused inquiry than the often rambling questions asked by individual jurors from the jury box.

In this case, we are satisfied that no prejudice occurred. Though a fairly extended colloquy occurred, which might better have been reined in, the judge's responses did not misstate the law to the detriment of either defendant, and counsel had previously been afforded adequate opportunity to comment on the matters on which the jury was seeking further guidance. There is no basis for reversal.

### Conclusion

We have considered appellants' other arguments and find them to be without merit. The judgments of the District Court are affirmed.