252 F.3d 238 (2nd Cir. 2001)
 UNITED STATES OF AMERICA, APPELLEE,
v.
PETER SIMEONOV, ALSO KNOWN AS PETER THE BLOND; KALOYAN PETRANTCHEV; GUEORGUI DJAMOV; ALIAN ANDRIANOV, DEFENDANTS,
IVAN NIKOLOV, ALSO KNOWN AS IVAN DENIKOV, DEFENDANT-APPELLANT.
 Docket No. 00-1605
August Term, 2000
 UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
 Argued: June 4, 2001
Decided June 8, 2001
 
 Ivan Nikolov challenges a judgment of the United States District Court for the Southern District of New York (Martin, J.) sentencing him to 57 months in prison after Nikolov pled guilty to a two count information. Nikolov argues that the district court abused its discretion by failing to conduct a hearing to assess his complaints with respect to the assistance of retained counsel and by refusing to assign counsel to replace the attorney with whom he was dissatisfied.
 Affirmed.
 Martin G. Goldberg, Franklin Square, N.Y., for appellant.
 Edward C. O'Callaghan, Assistant United States Attorney, for Mary Jo White, United States Attorney for the Southern District of New York (Marc L. Mukasey on the brief), for appellee.
 Before: Winter, Calabresi, and Pooler, Circuit Judges.
 
 Per Curiam
 
 1
 On November 8, 1999, appellant Ivan Nikolov was arrested by secret service agents on suspicion of involvement in a conspiracy to pass counterfeit American dollars. The Government subsequently learned that Nikolov had previously been deported, and had reentered the United States illegally in May of 1999. A two-count information, charging Nikolov in connection with these activities, was filed on April 7, 2000. The first count alleged conspiracy to sell, buy, and pass counterfeit obligations of the United States, in violation of 18 U.S.C. §§ 371, 472, 473, and the second count charged illegal re-entry into the United States following deportation, in violation of 8 U.S.C. § 1326(a).
 
 
 2
 On the day that the information was filed, appellant entered into a plea agreement with the Government. In the agreement, the parties stipulated that Nikolov's base offense level was nine, and that a nine level increase in the base offense level was required, under U.S.S.G. §§ 2B5.1(b)(1) and 2F1.1(b)(1)(J), because the face value of the counterfeit items exceeded $350,000. Nikolov's sentence range was ultimately determined to be 33 - 41 months.
 
 
 3
 At his allocution, Nikolov pled guilty to the crimes charged in the information. The district court (Martin, J.) accepted Nikolov's plea and judged him guilty of the relevant crimes. Immediately thereafter, however, appellant expressed concern about the quantity of money with respect to which he would be sentenced on the conspiracy count. The district court explained to Nikolov that he would be "held responsible for the amount of counterfeit money possessed and distributed by the members of the conspiracy that [he] reasonably could have been aware of." The court then noted that Nikolov had entered into a stipulation to the effect that his crime involved in excess of $350,000 in counterfeit money, and explained to Nikolov the consequences of stipulating to, rather than challenging, the amount. The district court told Nikolov that, if he wanted to, he could plead guilty to the conspiracy charge but not stipulate to the quantity of counterfeit money, and that if he did so, he would be entitled to contest the matter immediately prior to sentencing at a Fatico hearing. Nikolov said, "That is what I wanted to do." With Nikolov's consent, Judge Martin (once again) accepted his guilty plea, but stated that the case would be held over for one week so that Nikolov could confer with his lawyer before deciding whether he would ultimately stipulate to the quantity of counterfeit money.
 
 
 4
 The parties appeared before the court one week later. At this hearing, the district court made certain that Nikolov understood the ramifications of withdrawing the stipulation. Defense counsel Albert J. Brackley explained that he had met with his client three times since the April 7 hearing, and that he had conveyed to Nikolov strong reservations about proceeding to a Fatico hearing. Notwithstanding his attorney's concerns, Nikolov elected to contest the quantity of counterfeit money involved in his crime. "If this is what [Nikolov] wants to do," Brackley stated, "I am not going to stop him...."
 
 
 5
 Before the Fatico hearing took place, however, two significant developments occurred. First, Nikolov wrote a letter to the district court in which he complained about the assistance of his attorney. Appellant informed the district court that, in his view, his attorney was "unclear and nebulous regarding the details surrounding [the] case." Nikolov also contended that Brackley had not visited him to discuss the case, nor had they been in sufficiently close communication. Specifically, Nikolov claimed that Brackley had lied when he told the court that he had conferred with his client three times in between the April 7 and April 14 hearings. "During that week," Nikolov insisted, " he neither came to see me nor discussed this case with me." Finally, in his letter, Nikolov "request[ed] the court [sic] appoint me an attorney who will be interested in representing me adequately and be prepared to devote time and skill to my case, or speak to my attorney and ask him if he is willing to represent me as he should in this case."
 
 
 6
 Second, shortly before the Fatico hearing, a cooperating witness named Vassil Pigov sent the Government letters that he had received from Nikolov while the two men were incarcerated during the immediately preceding months. In these letters, Nikolov stated that he knew that Pigov was to be called as a Government witness at his hearing and urged Pigov to lie about Nikolov's role in the conspiracy. On the basis of Pigov's information, the Government decided to seek a two-point obstruction of justice enhancement of Nikolov's sentence.
 
 
 7
 On August 24, 2000, appellant appeared before the district court for his Fatico hearing. At the start of the hearing, Judge Martin gave the defendant and his attorney an opportunity to discuss Nikolov's concerns as to his representation. Mr. Brackley informed the court that "there had always been... a difference of opinion with respect to the way to represent this defendant," and that he had serious reservations about his client's decision to proceed to a Fatico hearing. Moreover, explained Brackley, in light of the information contained in the letters from Nikolov to Pigov, "the way [the defendant] and the witness are going to handle this hearing creates a very difficult situation for me, because I don't know that any of the things that he is asking the witness to do is [sic] credible.... I don't know how I can represent him given what he is doing.... I don't really see how I could go ahead." Nikolov then reiterated his assertion that there had been inadequate communication between his lawyer and him during the preceding months and that Brackley was not sufficiently informed about the details of the case.
 
 
 8
 Nevertheless, the district court stated that it was "not thinking of replacing Mr. Brackley," but was, rather, "intending to proceed with the hearing." Judge Martin concluded, in light of the letters Nikolov had written to Pigov, that "Mr. Nikolov for some reason would like to delay these proceedings." The district court then informed appellant that he had the option of representing himself or proceeding with Mr. Brackley as an attorney. When the district court told Nikolov, "I am not at this stage of the proceeding going to appoint new counsel," Nikolov replied, "That's fine with me. I just wanted to inform the court that he doesn't represent me in the way he was supposed to." As to Brackley's concern with respect to obstruction of justice and Pigov's testimony, Nikolov assured the court, "He is not going to lie, it is as simple as that." The district court told Mr. Brackley, "I am not going to relieve you at this point...." The hearing, therefore, proceeded with Brackley as counsel.
 
 
 9
 At the conclusion of the hearing, the district court found that "the evidence before the court clearly supports a finding... that this defendant knew he was part of a conspiracy and it involves more than $500,000 of counterfeit currency." The district court also found that the letters from Nikolov to Pigov "are clearly an attempt to obstruct justice." "It is clear in those letters," the district court stated, "that the witness is telling Mr. Pigov to say things that Mr. Pigov's testimony here demonstrates were not true." Nikolov was sentenced to 57 months in prison.
 
 
 10
 This appeal followed.
 
 DISCUSSION
 
 11
 On appeal, Nikolov, who is represented by new counsel, contends that the district court erred in not holding a hearing to determine whether Mr. Brackley should have been replaced prior to sentencing. He also asserts that the district court "should have relieved Brackley and assigned CJA counsel or instructed appellant to retain new counsel," and that failure to do so deprived him of his Sixth Amendment rights.
 
 
 12
 "It is settled that where a defendant voices a seemingly substantial complaint about counsel, the court should inquire into the reasons for dissatisfaction." McKee v. Harris, 649 F.2d 927, 933 (2d Cir. 1981) (internal quotation marks omitted). "[W]hen, for the first time, an accused makes known to the court in some way that he has a complaint about his counsel, the court must rule on the matter. If the reasons are made known to the court, the court may rule without more." Id. at 934 (emphasis added) (alteration in original). The reasons for Nikolov's dissatisfaction with his attorney were made clear to the district court both in writing, in appellant's letter of July 29, and orally, at the hearing on August 24. Under McKee, therefore, the district court was well within its discretion when it decided to take up Nikolov's complaints as to counsel without the benefit of a full-dress hearing, separate from the Fatico proceeding.
 
 
 13
 As to the merits of the district court's denial of Nikolov's request for substitute counsel, we review the court's decision for abuse of discretion. See United States v. Gallop, 838 F.2d 105, 108 (4th Cir. 1988) (citing Morris v. Slappy, 461 U.S. 1, 13 (1983) ("The determination of whether or not the motion for substitution of counsel should be granted is within the discretion of the trial court...."). "In evaluating whether the trial court abused its discretion in denying defendant's motion for substitution of counsel, the First and Ninth Circuits have held that the appellate courts should consider the following facts: Timeliness of the motion; adequacy of the court's inquiry into the defendant's complaint; and whether the attorney/client conflict was so great that it had resulted in total lack of communication preventing an adequate defense." Id. at 108 (citing United States v. Allen, 789 F.2d 90, 92 (1st Cir. 1986); United States v. Whaley, 788 F.2d 581, 583 (9th Cir. 1986)).
 
 
 14
 Though there is plenty of evidence in the record that Nikolov and his attorney disagreed as to what was in appellant's best interests, and thus the danger of a communication breakdown is present, we believe that the district court acted within its discretion in denying Nikolov substitute counsel. The court was entitled to credit Brackley's statement that he conferred with his client three times during the week after the allocution and to disbelieve Nikolov's assertion that the attorney was lying and that the two had not discussed the case. Indeed, given that, at the April 14th hearing, when Brackley informed the court that he had met with his client three times during the prior week, Nikolov failed to object at all, the district court's subsequent decision to credit the attorney's account seems more than reasonable. Moreover, while Brackley reported to the court that he and his client had a difference of opinion as to sound defense strategy, the attorney did not suggest to the court that he and his client were not in communication.
 
 
 15
 Finally, the notion that Brackley was unable to provide an adequate defense for his client is belied by the record. It is true that Brackley had, before the hearing, expressed reservations about being able to represent Nikolov given his concerns about testimony that was not "credible." But since Pigov had already revealed to the Government the letters in which Nikolov encouraged him to lie, there was not much room for such concern. Furthermore, the transcript of Nikolov's Fatico hearing reveals that Brackley advocated aggressively on his client's behalf, both in cross-examining Government witnesses and in his closing remarks. Under these circumstances, the district court did not abuse its discretion in its decision that the conflict between Nikolov and his attorney was not "so great that it had resulted in total lack of communication preventing an adequate defense."[1] See United States v. Morrissey, 461 F.2d 666, 670 (2d Cir. 1972) (noting that while the trial judge should have made "more searching inquiries before the trial and motion hearings commenced," the record from trial revealed that "there by no means existed an `irreconcilable conflict' which seriously impaired [the] usefulness [of] trial counsel.")
 
 
 16
 We have considered all of appellants' arguments and find them to be without merit. The judgment of the district court is AFFIRMED.
 
 
 
 NOTE:
 
 
 [1]
 Whether Nikolov ever unambiguously asked the district court for substitution of counsel is subject to debate. Appellant's letter of July 29th asks Judge Martin to replace Brackley or to speak to him about his representation. One might construe the district court's course of action as simply pursuing the latter option and satisfying itself that Brackley could be relied upon to provide effective counsel. Because we conclude that a denial of substitute counsel was, in any event, well within the district court's discretion, we need not take up the question of whether Nikolov's "request" was sufficiently unequivocal to raise constitutional concerns.