11-2995-cr
United States v. Basciano

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of December, two thousand fifteen.

PRESENT: REENA RAGGI,
RICHARD C. WESLEY,
CHRISTOPHER F. DRONEY,
*Circuit Judges*.

-----------------------------------------------------------------

UNITED STATES OF AMERICA,
*Appellee*,

v.                                                                No. 11-2995-cr

VINCENT BASCIANO, AKA Vinny Gorgeous,
AKA Vinny from the Bronx,
*Defendant-Appellant*,

JOSEPH MASSINO, PATRICK DEFILIPPO, AKA
Patty from the Bronx, JOHN JOSEPH SPIRITO,
AKA Johnny Joe, EMANUEL GUARAGNA,
ANTHONY FRASCONE, AKA Anthony Nicole,
AKA Anthony the Hat, ANTHONY SIANO,
RUSSEL TRUCCO, AKA The Truck, ANTHONY
DONATO, AKA Little Anthony,
*Defendants.*

-----------------------------------------------------------------

1

FOR APPELLANT: Ryan Thomas Truskoski, Ryan Thomas Truskoski, P.A., Harwinton, Connecticut.

FOR APPELLEE: Taryn A. Merkl, Amy Busa, Nicole M. Argentieri, Jack Dennehy, Assistant United States Attorneys, *for* Robert L. Capers, United States Attorney for the Eastern District of New York, Brooklyn, New York.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Nicholas G. Garaufis, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on July 21, 2011, is AFFIRMED.

For the third time, defendant Vincent Basciano, one-time acting boss of the Bonanno organized crime family, stands convicted following a jury trial of crimes committed as part of that enterprise. See United States v. Basciano, 465 F. App'x 9 (2d Cir. 2012); United States v. Basciano, 384 F. App'x 28 (2d Cir. 2010). Serving two consecutive life sentences as a result of these three convictions, Basciano's latest conviction for conspiratorial and substantive murder in aid of racketeering, see 18 U.S.C. § 1959(a)(1), (5); and for discharging a firearm in furtherance of those crimes of violence, see id. § 924(c)(1)(A)(iii), pertains to his ordering the murder of Bonanno confederate Randolph Pizzolo. Basciano argues on appeal that the district court erred in (1) declining, without a hearing, to suppress statements made by Basciano to a prison cooperator in violation of his Fifth and Sixth Amendment rights; (2) failing to instruct the jury as to multiple conspiracies and the termination of a conspiracy by withdrawal; and (3) responding to a jury note in writing rather than orally in open court. We assume the

2

parties' familiarity with the facts and the record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

1.      Denial of Motion To Suppress

Basciano contends that recorded statements he made on January 3 and 7, 2005, to fellow prisoner Joseph Massino, the official boss of the Bonanno family, were procured in violation of the Fifth and Sixth Amendments because Massino was then operating as a government informant (the "Massino Tapes").[1]  Some background is necessary to our discussion of why this argument fails on the merits.

In late 2004, Massino had informed federal authorities that Basciano—who had been incarcerated since November 2004 on a charge of racketeering conspiracy in a separate case (the "03-cr-929 case")—was pursuing from jail the murders of both Pizzolo and the Assistant United States Attorney prosecuting Basciano's case.  Pizzolo was, in fact, found shot dead on a Brooklyn street on December 1, 2004.  Massino consented to the January recording of his conversations with Basciano about these as-yet-uncharged crimes.  On January 26, 2005, a grand jury charged Basciano and Dominick Cicale in this case with federal crimes relating to the Pizzolo murder.

---

[1] At the same time that it denied suppression of the Massino Tapes, the district court denied suppression of unrecorded statements Basciano made to Massino on November 23 and December 3, 2004 (the "Massino Conversations").  The district court concluded that Fifth and Sixth Amendment protections did not apply to the latter because Massino was not yet acting as a government agent.  See United States v. Basciano, 763 F. Supp. 2d 303, 324–28, 331 n.13 (E.D.N.Y. 2011).  Because Basciano does not dispute that conclusion on appeal, we here address only the admissibility of the Massino Tapes.

Although it is undisputed that Massino was acting as a government agent at the time the Massino Tapes were recorded, we identify no Fifth or Sixth Amendment violation for the reasons set forth below.

a.    Sixth Amendment

Basciano argues that his statements to Massino were obtained in violation of his Sixth Amendment right to counsel, which attached by virtue of his indictment in the 03-cr-929 case. See Massiah v. United States, 377 U.S. 201, 205–06 (1964); accord McNeil v. Wisconsin, 501 U.S. 171, 178–79 (1991). The argument fails because, although the Sixth Amendment rule applies to statements obtained by the government using an undercover agent, it does not extend to inquiries about uncharged crimes. See Illinois v. Perkins, 496 U.S. 292, 299 (1990); United States v. Jacques, 684 F.3d 324, 331 (2d Cir. 2012).

Basciano concedes that, at the time of the Massino Tapes, he had not yet been charged with the crimes for which he stands convicted in this case. Nevertheless, he cites Texas v. Cobb, 532 U.S. 162 (2001), to argue that the Sixth Amendment rights that attached under 03-cr-929 to his racketeering charges encompassed the Pizzolo crimes committed in furtherance of the same racketeering enterprise. This misconstrues Cobb, which extends Sixth Amendment rights to uncharged crimes only if they "would be considered the same offense under the Blockburger test" usually applied to double jeopardy challenges. Id. at 173. That test asks whether the elements of each offense are identical or whether each "contains an element not contained in the other." United States v. Dixon, 509 U.S. 688, 696 (1993); see Blockburger v. United States, 284 U.S. 299, 304

4

(1932). Our earlier decision in <u>United States v. Basciano</u>, 599 F.3d 184 (2d Cir. 2010), makes clear that the Pizzolo murder charges and the 03-cr-929 racketeering charges contain distinct elements. Indeed, in <u>Basciano</u> we explicitly reached that conclusion with respect to the 03-cr-929 racketeering conspiracy and the Pizzolo murder conspiracy. <u>See</u> <u>id.</u> at 197–99. Moreover, although Basciano did not there challenge the Pizzolo substantive murder charge, <u>see</u> <u>id.</u> at 188 n.2, we referenced the "long recognized" principle that "defendant may be prosecuted both for substantive racketeering in violation of § 1962(c) and for the commission of violent crimes in aid of racketeering in violation of § 1959(a)(1)-(3)" without violating double jeopardy, <u>see</u> <u>id.</u> at 198. This principle forecloses Basciano's argument pursuant to <u>Cobb</u> based on the Pizzolo substantive murder charge.[2]

Thus, Basciano's Sixth Amendment rights in the 03-cr-929 case did not extend to the investigation of the as-yet-uncharged Pizzolo murder crimes here at issue, nor to the

---

[2] <u>Basciano</u> did conclude that double jeopardy required dismissal of the substantive racketeering count then charged in 05-cr-060. <u>See</u> 599 F.3d at 200–14 (explaining identicality of enterprise and pattern elements of substantive racketeering charges in 03-cr-929 and 05-cr-060). But Basciano overreads this ruling in arguing that it "means that the previous case," <u>i.e.</u>, 03-cr-929, "is the same as the instant case," <u>i.e.</u>, 05-cr-060. Appellant Br. 33. As a result of the mandated dismissal of the substantive racketeering charge, the Massino Tapes were not used in 05-cr-060 for any charge constituting the "same offense" as one for which Basciano's Sixth Amendment rights had already attached in 03-cr-929 at the time of recording. <u>See</u> <u>Texas v. Cobb</u>, 532 U.S. at 168, 170 (explaining that, where right to counsel has attached for certain offenses, statements are inadmissible at trial <u>on those charges</u>); <u>United States v. James</u>, 712 F.3d 79, 105 (2d Cir. 2013) (stating that "Sixth Amendment right is offense specific" (internal quotation marks omitted)). Thus, <u>Basciano</u>'s double jeopardy ruling provides no support for the Sixth Amendment challenge raised on this appeal.

5

uncharged § 924(c) firearm count that he does not otherwise maintain is part of any 03-cr-929 offense. Accordingly, this part of his suppression challenge fails on the merits.

b. Fifth Amendment

Basciano contends that his recorded statements were obtained in violation of the Fifth Amendment because of the compelling pressures inherent in Massino's status as then-boss of the Bonanno crime family. The argument fails because, as the Supreme Court has recognized, there are two "essential ingredients" for police initiated interrogation to violate the Fifth Amendment: "a 'police dominated atmosphere,'" and "compulsion." Illinois v. Perkins, 496 U.S. at 296 (quoting Miranda v. Arizona, 384 U.S. 436, 449 (1966)). The former is generally not present when a suspect speaks freely to someone he believes to be a fellow inmate. See id.

Arizona v. Fulminante, 499 U.S. 279 (1991), cited by Basciano, warrants no different conclusion. There, the Supreme Court concluded that, although it was a "close" case, a defendant's confession to a cooperating inmate was inadmissible because it had been coerced by exploiting the defendant's "fear of physical violence" from other abusive inmates with an offer of protection from the cooperator. Id. at 287–88. This case presents no such concerns. Nothing in the record indicates that Basciano was fearful of jail generally or Massino in particular. Rather, as the district court observed, and the tapes confirm, Basciano and Massino spoke as close criminal confederates occupying the top tier of the Bonanno family hierarchy. See Illinois v. Perkins, 496 U.S. at 298 (concluding that conversation raised no Fifth Amendment concern where suspect "viewed the cellmate-agent as an equal and showed no hint of being intimidated"). There

6

was nothing threatening in Massino's manner when he discussed Pizzolo's murder with Basciano. At most, Massino lulled Basciano "into a false sense of security" about these discussions, which does "not rise to the level or compulsion or coercion to speak" barred by the Fifth Amendment. Id. at 297.

Thus, this part of Basciano's suppression challenge also fails on the merits.

c.      Failure To Hold an Evidentiary Hearing

Basciano faults the district court for denying his suppression motion without holding an evidentiary hearing. Such a hearing is required only "if the moving papers are sufficiently definite, specific, detailed and nonconjectural to enable the court to conclude that contested issues of fact" exist. United States v. Getto, 729 F.3d 221, 226 n.6 (2d Cir. 2013). We review the denial of an evidentiary hearing for abuse of discretion, see id., which is lacking here.

Insofar as Basciano argues that the district court was required to hold a hearing to determine whether Massino coerced Basciano's recorded statements, we note at the outset that Basciano made no claim of coercion when he moved to suppress the Massino Conversations (i.e., the unrecorded statements) in the 03-cr-929 case, a matter on which the district court held hearings over two days. See United States v. Basciano, 763 F. Supp. 2d at 324, 327. Nor did Basciano call Massino as a witness at that hearing, although the district court ensured his availability for that purpose. In now asserting that he felt "peculiar compulsion" on being "interrogated in close quarters by the ruthless boss of the Bonanno crime family," G.A. 70, Basciano does not suggest, much less explain

7

why, such a feeling of compulsion would not have been equally applicable to the Massino Conversations, which were admitted in the 03-cr-929 case.

Further, he alleges no "definite, specific, [and] detailed" facts indicating that his statements were coerced. See United States v. Getto, 729 F.3d at 226 n.6. Rather, he relies on trial testimony about Massino's criminal role and conduct to support his claim of compulsion. The able and experienced district judge, who heard the Massino Tapes and presided over both Basciano's 2006 and 2007 trials—at which ample evidence was adduced of both defendant's own leadership of the Bonanno family and unhesitating resort to violence—had a sufficient basis to conclude, without a further hearing, that Basciano's recorded statements to Massino were not a product of coercion. See United States v. Basciano, 763 F. Supp. 2d at 331 (explaining that "facts do not indicate that Basicano, who was found in [the 03-cr-929 case] to also have held a senior position in the Bonanno crime family and to have similarly acted ruthlessly, spoke to Massino under conditions which were sufficient to 'overbear [his] will to resist and bring about confessions not freely self-determined'" (second alteration in original) (quoting Rogers v. Richmond, 365 U.S. 534, 544 (1961))).

In these circumstances, we identify no abuse of discretion and, thus, reject Basciano's suppression challenge in its entirety.

2.    Jury Instructions

Basciano asserts that he was entitled to jury instructions on multiple conspiracies and withdrawal from a conspiracy even though he intended to argue neither because (1) if the jury found that he had entered into a conspiracy with Dominick Cicale to murder

8

Pizzolo, Cicale withdrew from that conspiracy when, soon after Basciano's November 2004 arrest, Cicale decided not to go through with the murder;[3] and (2) when Cicale thereafter agreed to go through with the Pizzolo murder on orders of Michael Mancuso, Basciano's acting underboss, a second conspiracy was formed that did not include Basciano. Where a defendant appeals the denial of requested instructions, we will overturn the conviction "only if that instruction is legally correct, represents a theory of defense with basis in the record that would lead to acquittal, and the theory is not effectively presented elsewhere in the charge." United States v. Quattrone, 441 F.3d 153, 177 (2d Cir. 2006) (internal quotation marks omitted).

Basciano's appeal fails the second requirement of this analysis. Nothing in the record indicates that Cicale ever communicated his decision not to go through with the Pizzolo murder "in a manner reasonably calculated to reach" Basciano. United States v. James, 712 F.3d 79, 106 (2d Cir. 2013) ("To withdraw from a conspiracy, a person must take some affirmative action either by making a clean breast to the authorities or communicating the abandonment in a manner reasonably calculated to reach co-conspirators." (quoting United States v. Jackson, 335 F.3d 170, 182 (2d Cir. 2003))). Rather, within days of telling Anthony Aiello that they were not going to murder Pizzolo, Cicale resumed his plans to do just that. See United States v. Berger, 224 F.3d 107, 118 (2d Cir. 2000) (explaining that to withdraw, individual "must not take any subsequent acts to promote the conspiracy"). In any event, even if Cicale withdrew from the Pizzolo

---

[3] Basciano did not argue before the district court or the jury that he ever withdrew from the Pizzolo murder conspiracy, including as a result of his incarceration. Rather, he maintained that he never joined any such conspiracy.

9

murder conspiracy, that conspiracy itself continued so long as there were at least two remaining members. See United States v. Miranda-Ortiz, 926 F.2d 172, 175 (2d Cir. 1991). The evidence indicated that Basciano and Mancuso were still members of the conspiracy and, as the district court found, that Aiello had taken no affirmative steps to withdraw. Thus, the district court correctly declined to charge termination of the conspiracy by withdrawal.

Without record support for termination of a first conspiracy, Basciano cannot plausibly assert a second conspiracy. See United States v. Vazquez, 113 F.3d 383, 386 (2d Cir. 1997) (explaining that "to secure a reversal on the ground that the court failed to give a multiple conspiracy charge, a defendant must prove there were two or more groups operating separately from one another" and "that failure to give the requested charge prejudiced defendant"). Such a showing cannot be made where, as here, "there was ample proof before the jury for it to find beyond a reasonable doubt that defendant was a member of the conspiracy charged in the indictment." Id. Here, the record indicates that Basciano was always a member of the charged conspiracy, both before and after Mancuso reaffirmed the order to kill Pizzolo. See G.A. 187 (telling Massino that "I [Basciano] gave the order" to kill Pizzolo); G.A. 245–46 (explaining, in response to Massino's question as to why Basciano had not told him earlier of killing Pizzolo, that "[i]t was already in the works"). Nor can Basciano demonstrate prejudice in light of ample direct evidence—some from Basciano himself—of his leadership of the single Pizzolo murder conspiracy.

Accordingly, Basciano's denied jury instructions challenge is without merit.[4]

3.      Providing Supplemental Instruction in Writing

In response to a query from the deliberating jury as to "what circumstances would [render someone] no longer . . . a member of the conspiracy," G.A. 161, the district court sent a written response into the jury room rather than bringing the jury into the courtroom for further oral instruction.  Basciano, who questioned the use of this procedure but failed to articulate a basis for any objection at the time, now argues that it was structural error because (1) he was deprived of his right to be present at every trial stage, and (2) all jury instructions must be read aloud to the jury.  We disagree.

First, although a criminal defendant has the right to be present at "every trial stage," Fed. R. Crim. P. 43(a)(2), the challenged action did not deprive Basciano of that right.  There is no dispute that the district court disclosed the content of the jury note to Basciano's counsel, elicited counsel's views, and indicated that its response would be communicated in writing—all in the presence of Basciano.  See G.A. 160–74.[5]

---

[4] Because this argument is without merit, we need not consider Basciano's related claim that the denied instructions also infected his conviction for substantive murder and firearms use.  We do note, however, that the substantive murder conviction was not based on proof of conspiracy, see Pinkerton v. United States, 328 U.S. 640 (1945), but rather on aiding and abetting that murder, see 18 U.S.C. § 2.

[5] In these circumstances, the cases relied on by Basciano are inapposite.  See Rogers v. United States, 422 U.S. 35, 36, 39 (1975) (identifying error in submitting written response to jury note without first informing defense counsel or providing him with opportunity to be heard); United States v. Glick, 463 F.2d 491, 492 (2d Cir. 1972) (concluding that "private communications between the judge and jury violated the unequivocal mandate of Rule 43, which requires the defendant to be present 'at every stage of the trial'" (quoting United States v. Schor, 418 F.2d 26, 31 (2d Cir. 1969)));

11

Basciano's argument that all instructions must be read aloud to the jury relies on cases in which a trial judge failed to read to the jury <u>any</u> of the elements of the charged offenses. See <u>Guam v. Marquez</u>, 963 F.2d 1311, 1314–15 (9th Cir. 1992); <u>United States v. Noble</u>, 155 F.2d 315, 316–18 (3d Cir. 1946). Basciano complains of no such omission here; indeed, it is undisputed that the district court read aloud the entirety of the initial jury charge.

As for responses to jury notes, while this court previously expressed reservations about providing such responses in writing, see <u>United States v. Schor</u>, 418 F.2d 26, 29–30 (2d Cir. 1969), we have since observed that "it is commonplace for district court judges to send written answers to jury questions, after proper consultation with counsel in the presence of the defendant, rather than wasting 20 minutes of the time of nearly 20 people for a stately courtroom delivery," <u>United States v. Grant</u>, 52 F.3d 448, 449–50 (2d Cir. 1995) (footnote omitted); <u>see also</u> <u>United States v. Ulloa</u>, 882 F.2d 41, 45 (2d Cir. 1989) (noting that "trial judges must be permitted some latitude in determining how best to handle jury inquiries"). As noted, the district court's challenged actions followed such consultation here at which no objections were raised.

Even if there were any error here, it was not structural and, therefore, is subject to harmless error review. See Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."); <u>see also</u> <u>United States v. Moran-Toala</u>, 726 F.3d 334, 343–44 (2d Cir. 2013) (applying harmless error

---

<u>United States v. Schor</u>, 418 F.2d at 29–30 (concluding that district court erred in failing to afford defense counsel opportunity to be heard before responding to jury note).

12

analysis to challenged supplemental instruction, observing that error did not "so fundamentally undermine the fairness or the validity of the trial that [it] require[d] voiding its result regardless of identifiable prejudice" (internal quotation marks omitted)). Here, the jury note sought only a clarification of the district court's earlier instruction that a defendant may be held responsible for acts taken in furtherance of the conspiracy "as long as he remained a member of the conspiracy." G.A. 160; see also G.A. 158. The parties do not dispute that the district court's response—which informed the jury that a defendant is presumed to be a member of a conspiracy until the last overt act unless he proves by a preponderance of the evidence his withdrawal from the conspiracy or the termination of the conspiracy—provided a correct statement of the law. See United States v. Ulloa, 882 F.2d at 45 (concluding that defendant not prejudiced by court's colloquy with jury in response to questions because "judge's responses did not misstate the law to the detriment of" defendant). Basciano did not argue at trial that he withdrew from the conspiracy and the record evidence made clear beyond a reasonable doubt that Basciano was the leading member of the Pizzolo murder conspiracy from its inception through achievement of its objective. See United States v. Carr, 424 F.3d 213, 226 (2d Cir. 2005) (concluding that any error in supplemental jury instruction was harmless because it was "clear beyond a reasonable doubt that the jury would have found the defendant guilty absent the asserted error" (quoting Neder v. United States, 527 U.S. 1, 18 (1999))).

Accordingly, Basciano's challenge to the district court's written response to a jury note does not warrant a new trial.

13

4.      Conclusion

We have considered Basciano's remaining arguments and conclude they are without merit.  Accordingly, the judgment of the district court is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court