*United States v. Williams*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16th day of December, two thousand twenty-four.

PRESENT:
> AMALYA L. KEARSE,
> JOSEPH F. BIANCO,
> STEVEN J. MENASHI,
> *Circuit Judges*.

---

UNITED STATES OF AMERICA,

> *Appellee*,

> v.

MARQUIS WILLIAMS,

> *Defendant-Appellant*,

DARA MORRISON,

> *Defendant*.*

23-6458-cr

---

FOR APPELLEE:
DANIEL P. GORDON, Assistant United States Attorney (Sandra S. Glover, Assistant United States Attorney, *on the brief*), *for* Vanessa

---

\* The Clerk of the Court is respectfully directed to amend the caption on this Court's docket to be consistent with the caption on this order.

Roberts Avery, United States Attorney for the District of Connecticut, New Haven, Connecticut.

FOR DEFENDANT-APPELLANT: DAVID L. MCCOLGIN, ESQ., Charlotte, Vermont.

Appeal from a judgment of the United States District Court for the District of Connecticut (Vanessa L. Bryant, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment, entered on April 26, 2023, is **AFFIRMED** in part and **VACATED** in part, and the case is **REMANDED** for proceedings consistent with this summary order.

Defendant-Appellant Marquis Williams appeals from the district court's judgment entered after he pled guilty, pursuant to a plea agreement with the government, to conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349. The district court sentenced Williams principally to seventy-eight months' imprisonment, to be followed by five years of supervised release. On appeal, Williams argues that the district court violated his Sixth Amendment and Due Process rights and that those violations warrant reversal of his conviction. Williams alternatively asserts, with respect to his sentence, that the district court erred in: (1) calculating the loss amount for purposes of U.S.S.G. § 2B1.1(b)(1) based on the intended loss rather than the actual loss; and (2) imposing certain conditions of supervised release. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision.

## I. Sixth Amendment and Due Process Claim

Williams argues that, when the district court granted his third court-appointed counsel's motion for substitution, it erred "in ruling prospectively that it would deny any future motions for

substitution of counsel regardless of the grounds," thereby forcing him to proceed with his fourth attorney, even if a conflict arose in connection with the representation, because he would otherwise be required to represent himself *pro se*. Appellant's Br. at 21. Williams further asserts that this prospective ruling regarding any future motion for substitution constitutes a structural error that voids the appellate waiver provision in his plea agreement and requires reversal of his conviction. *See United States v. Balde*, 943 F.3d 73, 93 (2d Cir. 2019) ("[A]n appeal waiver included in a plea agreement does not bar challenges to the process leading to the plea." (internal quotation marks and citation omitted)).

We review a district court's determination with respect to a request for substitution of counsel for abuse of discretion. *See United States v. Simeonov*, 252 F.3d 238, 241 (2d Cir. 2001) (per curiam). Under that standard, "[p]articularly where . . . the court has already replaced counsel more than once, and the case approaches trial, it is reasonable for the court to require an intractable defendant either to proceed with the current appointed lawyer, or to proceed *pro se*." *United States v. Culbertson*, 670 F.3d 183, 193 (2d Cir. 2012). In general, "where a defendant voices a seemingly substantial complaint about counsel, the court should inquire into the reasons for dissatisfaction." *United States v. John Doe No. 1*, 272 F.3d 116, 123 (2d Cir. 2001) (internal quotation marks and citation omitted). However, a court's failure to inquire is subject to harmless error analysis. *See, e.g.*, *McKee v. Harris*, 649 F.2d 927, 933–34 (2d Cir. 1981); *accord Norde v. Keane*, 294 F.3d 401, 412 (2d Cir. 2002); *John Doe No. 1*, 272 F.3d at 123; *United States v. Eltayib*, 88 F.3d 157, 168 (2d Cir. 1996).

Here, we discern no abuse of discretion in the district court's handling of the repeated complaints that Williams raised about his court-appointed attorneys throughout his criminal case. Between Williams's arrest on November 14, 2019 and his guilty plea on May 19, 2022, Williams

3

had a series of four court-appointed lawyers.[1]  On February 1, 2020, while represented by his second court-appointed attorney, Jeffrey Kestenband, Williams was remanded for pretrial detention, and the district court denied his motion for release from custody due to the coronavirus pandemic.  Several months later, Williams asked Kestenband to withdraw, alleging that Kestenband had not visited him in prison and was not keeping him informed about discovery and other developments in the case.  The district court granted his motion to appoint new counsel, and his third attorney, Jon Schoenhorn, entered his appearance the next day.  Approximately three and a half months later, Schoenhorn moved to withdraw at Williams's request.  At the proceeding to address that motion, United States Magistrate Judge Robert M. Spector observed that, because the withdrawal motion by Schoenhorn cited "the very same reason" as the motion for withdrawal by Kestenband, he was "left to wonder" about "what's going to be different" if he granted the motion. App'x at 96–97.  Magistrate Judge Spector told Williams that if he were to grant the motion, and Williams became "unhappy" with his fourth attorney "for the same reasons [he was] unhappy with Attorney Kestenband and Attorney Schoenhorn, [he would] have to represent [himself]."  App'x at 103.  He also cautioned Williams by stating, "[t]here is no chance to come back and say, you know what, I like Attorney Kestenband or I like Attorney Schoenhorn better.  It just doesn't work that way."  App'x at 105.  Ultimately, although Magistrate Judge Spector expressed skepticism that substitution would "solve" the challenges of communication presented by the pandemic or "make it easier for somebody to reach" Williams, he granted the motion because he did not want to "force

---

[1] A fifth attorney filed a notice of appearance on Williams's behalf, but he was removed from the docket the next day and there is no indication he undertook any representation of Williams.  We also note that, although the federal public defender initially appointed to represent Williams moved to withdraw as a result of a conflict of interest, Williams stated during the hearing on his third counsel's motion to withdraw that he had also asked that initial attorney to "step off" because he was unsatisfied with his performance at a bond hearing.  App'x at 66.

a relationship where there just isn't one." App'x at 105. Magistrate Judge Spector then had the following exchange with Williams:

> THE COURT: Mr. Williams, if you were to file a motion in the future for new counsel, you should expect that motion to be denied and you have two choices. One choice would be to continue with the counsel, the new counsel that I'm appointing to you today. And the second choice would be to represent yourself. And these would be the only two choices.
>
> I'm saying this now because I think it's important for you to understand the nature of appointing representation and what we call constitutionally effective representation going forward. You're entitled to constitutionally effective representation. You're entitled to counsel to be appointed for you at no cost to you, but you're not entitled to choose or to have counsel of your choice. What that means is you're not entitled to say I'm unhappy with the attorney, give me a new one if the attorney doesn't do what you want the attorney to do or doesn't achieve the results that you want the attorney to achieve.
>
> And so I want to make sure you understand that once this attorney has been appointed, whoever that attorney is, I'm sure that attorney will zealously represent you. But if at some point you're unhappy with that attorney, like I said, you'll either have to represent yourself or continue with that attorney representing you. Do you understand, Mr. Williams?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: All right. Do you have any questions about what I've just explained?
>
> THE DEFENDANT: No, sir, as long as we all have a protocol.

App'x at 118–19. Magistrate Judge Spector issued a similar warning in the text order granting the motion for new counsel.

Williams argues that this warning "effectively barred [him] from making any further motions to substitute counsel by prospectively ruling that they would be denied, regardless of the grounds." Appellant's Br. at 28. According to Williams, "[t]he prospective denial of all future requests deprived [him] of his Sixth Amendment right to request substitution of counsel if in good faith he believed there was a conflict or breakdown in communication with counsel or other bases for believing he was not receiving effective assistance" and "also denied him his right to be heard

5

under the Due Process Clause of the Fifth Amendment." *Id*. We find this argument unpersuasive.

The statements to Williams by Magistrate Judge Spector cannot be reasonably construed to foreclose any future applications for substitution of counsel, especially in the context of the entire record. "This Court has long recognized that certain restraints must be put on the reassignment of counsel lest the right be manipulated so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice." *McKee*, 649 F.2d at 931 (internal quotation marks and citation omitted). Magistrate Judge Spector did not state that Williams could not make any future motions to substitute counsel, nor did he advise Williams that any such future motion would be automatically denied no matter the reason. In fact, he specifically advised Williams of his Sixth Amendment right to constitutionally effective representation. *See* App'x 118–19. Instead, as outlined above, Magistrate Judge Spector narrowly warned Williams that he should "expect" any future motion to appoint new counsel to be denied if he raised the same concerns again because, although Williams was entitled to constitutionally effective representation, he was "not entitled to say I'm unhappy with the attorney, give me a new one if the attorney d[id]n't do what [he] want[ed] the attorney to do or d[id]n't achieve the results that [he] want[ed] the attorney to achieve." *Id.*

These warnings and explanations of the circumstances under which appointed counsel may be substituted were proper under the circumstances and designed to ensure Williams understood the proceedings and the rights afforded to him going forward. *See John Doe No. 1*, 272 F.3d at 126 ("[A] defendant cannot establish an actual conflict of interest merely by expressing dissatisfaction with the attorney's performance." (alteration adopted) (internal quotation marks and citation omitted)); *see also United States v. Calabro*, 467 F.2d 973, 986 (2d Cir. 1972) (emphasizing that a defendant "does not have the unbridled right to reject assigned counsel and demand another"); *United States v. Lemke*, No. 22-156, 2023 WL 192493, at *2 (2d Cir. Jan. 17, 2023) (summary

6

order) (noting that this Court has "repeatedly held" that "disagreements over legal strategy are not cognizable as conflicts of interest under the Sixth Amendment"). Indeed, Magistrate Judge Spector was simply reiterating a similar warning that the district court judge had issued in a prior order when granting the motion to replace Williams's previous attorney. *See* App'x at 95–96 (reminding Williams that the district judge "caution[ed]" him that a party who is appointed counsel "has no automatic right to insist that his lawyer make motions that [he] prefer[s] to be made, to make supplementary pro se motions when an attorney says no, and to insist on new counsel if his attorney differs on strategy"). Moreover, rather than suggesting that no future motion would be granted under any circumstances, Magistrate Judge Spector referenced language in the order that described the factors considered in a motion for substitution of counsel, including "the timeliness of the request, the seriousness of the disagreements between attorney and client, and the extent to which the Defendant's own conduct contributes to the breakdown." App'x at 96. In short, these warnings did not operate to prospectively deny Williams the opportunity to raise any future representation issues with the court regarding his court-appointed attorney.

In any event, even assuming *arguendo* that Williams understood these statements to preclude him from any further requests for substitution of counsel, we conclude that the error was harmless. At the change-of-plea hearing, Williams's current counsel revealed that Williams had asked him to withdraw on different occasions but was now indicating that he was "satisfied with [his attorney's] advice and counsel and [did] not want [him] to withdraw." App'x at 151. Magistrate Judge Donna F. Martinez then conducted a colloquy with Williams, outside the presence of the prosecutors, to confirm that he was satisfied with his attorney's representation of him and wanted to "go forward" with his guilty plea. App'x at 153–55. During that colloquy, Magistrate Judge Martinez confirmed with Williams, *inter alia*, that he and his attorney could "work together"

7

and "effectively communicate," and that he wished to proceed with him as his attorney. *Id*. at 154.

Thus, any belief by Williams that he was foreclosed from raising representation issues with the court was cured by Magistrate Judge Martinez's making clear that he *could* raise such issues and confirming that there was no request for substitution. There is also not any indication in the record that there were grounds for substitution.[2] Accordingly, any alleged error in the warnings given to Williams about motions for substitution was harmless.[3]

## II. Conditions of Supervised Release[4]

Williams argues that the district court erred in several respects in imposing the special conditions of supervised release. We ordinarily review the imposition of a special condition of supervised release for abuse of discretion. *United States v. Dupes*, 513 F.3d 338, 342–43 (2d Cir.

---

[2] Williams also suggests that he could not make another request to substitute his attorney because he was faced with the "stark choice" of either stating that he was satisfied with counsel or proceeding without counsel and representing himself. Reply Br. at 2. We disagree. Williams was not instructed that, if a future motion for substitution was denied, he would lose his attorney and be *required* to proceed *pro se*. To the contrary, Magistrate Judge Spector explained, consistent with precedent, that if a future motion to substitute was denied, he would have "two choices," namely, "*[o]ne choice would be to continue with counsel*, the new counsel" being appointed, "[a]nd the second choice would be to represent [himself]." App'x at 118 (emphasis added); *see also id*. at 14 (explanation in district court order that "[i]f a court denies a motion [to] substitute counsel, the court may apprise the defendant of his or her remaining options: '*keeping this lawyer* or proceeding pro se.'" (emphasis added) (quoting *Eltayib*, 88 F.3d at 168 )). Thus, Williams was explicitly advised that he was free to make another motion for substitution of counsel in the future without being stripped of his current attorney if the motion was denied.

[3] Because we have determined that there was no error warranting reversal of Williams's conviction, any challenge to the length of his seventy-eight-month term of imprisonment is foreclosed by the appellate waiver provision in Williams's plea agreement, in which he agreed not to appeal any sentence of less than 105 months of imprisonment. Therefore, we need not address his argument that the district court erroneously applied the United States Sentencing Guidelines in determining his seventy-eight-month sentence. However, the appellate waiver does not apply to his challenges to his conditions of supervised release, which we address below.

[4] As a threshold matter, although Williams argues that the district court erred in imposing the *standard* conditions of supervised release that were not orally pronounced at sentencing, he concedes that this argument is precluded by our decision in *United States v. Truscello*, 168 F.3d 61, 63–64 (2d Cir. 1999), and seeks solely to preserve the issue for review by the *en banc* court or the Supreme Court. Therefore, we do not further address that argument.

2008). However, because Williams did not object to the special conditions at sentencing, we review for plain error. *United States v. Young*, 910 F.3d 665, 668 (2d Cir. 2018); *see also* Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."). The government concedes error that requires remand with respect to the challenges to the special conditions. We agree.

First, the district court erroneously included in the written judgment certain special conditions, which were not "basic administrative requirements," without orally pronouncing them at sentencing—namely, Special Financial Conditions (4), (5), and (8)–(10), as well as the portion of Special Financial Condition (3) that requires Williams to provide his probation officer with electronic access to any online management of any lines of credit. *See United States v. Thomas*, 299 F.3d 150, 153 (2d Cir. 2002) (alteration adopted) (internal quotation marks and citation omitted); *accord United States v. Washington*, 904 F.3d 204, 208 (2d Cir. 2018). Therefore, we vacate the judgment's imposition of these special conditions so that the district court can conform the written judgment to its oral sentence by striking the above-referenced restrictions.

Second, the district court erred in imposing Special Condition (3) to the extent that it improperly delegated to the probation officer the determination of whether Williams should be required to participate in substance abuse and mental health outpatient treatment. *See United States v. Peterson*, 248 F.3d 79, 85 (2d Cir. 2001) (per curiam). Thus, we vacate the outpatient treatment condition contained within Special Condition (3) and remand for resentencing to allow the district court to address the improper delegation.

\*            \*            \*

We have considered Williams's remaining arguments and find them to be without merit. Accordingly, we **VACATE** the judgment as to Special Financial Conditions (4), (5), and (8)–(10),

9

as well as the portion of Special Financial Condition (3) that requires Williams to provide his probation officer with electronic access to any online management of any lines of credit, and **REMAND** with instructions to the district court to strike those provisions from the judgment. Additionally, we **VACATE** the judgment as to Special Condition (3) and **REMAND** for resentencing on that condition consistent with this summary order. We **AFFIRM** the judgment in all other respects.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court