*United States v. Melvin Hill*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 19th day of November, two thousand twenty-five.

Present:
> GUIDO CALABRESI,
> ROBERT D. SACK,
> EUNICE C. LEE,
> > *Circuit Judges.*

---

UNITED STATES OF AMERICA,

> *Appellee,*

> v.

No. 24-1974

MELVIN HILL,

> *Plaintiff-Appellant,*

---

For Appellee:
ZACHARY B. STENDIG, Eugenia A. P. Cowles, Gregory L. Waples, Assistant United States Attorneys, on behalf of Michael P. Drescher, Acting United States Attorney for the

District of Vermont,
Burlington, VT.

For Plaintiff-Appellant:
JANEANNE MURRAY, Murray Law LLC, New York, NY.

Appeal from a July 16, 2024, judgment of the United States District Court for the District of Vermont (Crawford, *C.J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Melvin Hill appeals from a judgment convicting him, following a jury trial, of two counts of distribution of fentanyl, in violation of 21 U.S.C. § 841(a) and (b)(1)(C); one count of possession with intent to distribute fentanyl, cocaine base, cocaine, 50 grams or more of methamphetamine and 500 grams or more of a substance containing methamphetamine, in violation of 21 U.S.C. § 841(a) and (b)(1)(C); and two counts of felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Hill was sentenced to an aggregate term of 180 months of imprisonment, to be followed by a ten-year term of supervised release. On appeal, Hill challenges several pretrial and post-trial rulings in his counseled and pro se supplemental briefing.

## BACKGROUND

In January 2022, the Burlington Police Department (BPD) received information from a confidential informant that an individual later identified as Hill was a narcotics dealer in the Burlington area. On February 14, 2022, following a controlled, surveilled drug purchase by the informant from Hill, Detective Zachary Beal obtained a GPS warrant to monitor the location of Hill's drug-related cellphone at 15-minute intervals. Later, following a second controlled buy on

or around March 9, 2022, Beal obtained a warrant authorizing law enforcement to attach a tracking device to Hill's car. Both warrants were renewed later that month, extending the GPS location monitoring for an additional 30 days.

Using GPS location data and surveillance, investigators determined that Hill was a registered guest at a DoubleTree Hotel in Burlington. Beal then obtained a warrant to search Hill's hotel room and car on March 9. The following day, law enforcement executed this warrant and found cocaine base, a loaded pistol, and a set of keys on Hill's person. A search of his hotel room yielded $3,000 in cash, while Hill's car contained drugs, several beverage containers with false bottoms that concealed additional narcotics, and approximately $10,000 in cash. The buy money from the second controlled purchase was among the seized currency.

Hill was arrested and subsequently made a recorded statement to Beal, admitting to selling drugs in Vermont and to keeping a gun for protection. While Hill was being processed, another officer noticed two keys on Hill's key ring that appeared to be for a padlock and a lockbox. These keys were later found to unlock a storage unit at Flynn Avenue Self Storage in Burlington. Law enforcement obtained and executed a warrant on the storage unit, recovering additional guns, ammunition, and drugs.

We assume the parties' familiarity with the remaining underlying facts, the procedural history, and the issues on appeal, to which we refer only as necessary to explain our decision.

## DISCUSSION

### I.    Motion to Suppress

Hill challenges the validity of the renewed search warrant that authorized an additional thirty days of cellphone GPS tracking after the February 14 warrant expired. He argues that

3

Beal's supporting affidavit in support of renewal failed to establish continuing probable cause because it relied "solely on the assertion that he was a drug dealer and the government did not know where he was staying." Appellant's Br. at 31–32. Hill further contends that once the original warrant's objective, i.e., ascertaining where Hill was staying in the Burlington area, had been achieved, the second affidavit's "boilerplate language" about the need to "gather intelligence and evidence" was insufficient to justify renewal. Appellant's Br. at 32, 36. Accordingly, Hill maintains that, given Beal's purportedly defective affidavit, the renewed warrant was not supported by probable cause, and the drug and firearm evidence recovered from his storage unit after his arrest—whose discovery he attributes to the allegedly unlawful location-tracking warrant on his phone—constitutes derivative evidence that should have been suppressed. We disagree.

Probable cause exists when "the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." *Henry v. United States*, 361 U.S. 98, 102 (1959). It requires only "a fair probability that contraband or evidence of a crime will be found." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). In determining whether an affidavit establishes probable cause, courts must evaluate it "as a whole," not in a piecemeal fashion. *United States v. Ventresca*, 380 U.S. 102, 111 (1965). So long as there is a "substantial basis for concluding that a search would uncover evidence of wrongdoing," the warrant must be upheld. *Gates*, 462 U.S. at 236 (citation modified).

Here, the renewed warrant was issued after a controlled buy involving the target cellphone. In his affidavit, Beal described that transaction in detail, linked it to Hill's cellphone, summarized the progress of the investigation, and referenced Hill's prior federal prosecution and state arrests. Taken together, this information established a fair probability that GPS data from the phone would

4

yield evidence of drug trafficking and demonstrated a clear nexus between Hill's criminal activity and his cellphone. Far from boilerplate, the affidavit offered "powerful corroborative evidence for purposes of determining probable cause." *United States v. Wagner*, 989 F.2d 69, 73 (2d Cir. 1993).

Additionally, Hill's contention that the renewed warrant was unnecessary, on the basis that law enforcement already possessed some evidence of his drug trafficking and knew his whereabouts, is unpersuasive. Authorities were under no obligation to arrest Hill immediately following the controlled buy or when they learned of one of his frequented locations. *See United States v. Nersesian*, 824 F.2d 1294, 1317 (2d Cir. 1987) (explaining a defendant has no right to be arrested at a particular moment, even when probable cause exists). Rather, their decision to extend the GPS tracking warrant in order to deepen the investigation was lawful. *See United States v. Waltzer*, 682 F.2d 370, 373 (2d Cir. 1982) ("Law enforcement officers are under no constitutional duty to call a halt to a criminal investigation the moment they have the minimum evidence to establish probable cause." (internal quotation marks omitted)).

## II.    Motion to Appoint New Counsel

Hill argues that the district court abused its discretion by denying his motion for new counsel on grounds he characterizes as "the court's convenience," Appellant's Br. at 25, 45, 51, citing one of the court's noted concerns that a "problem" with appointing new counsel is "we've already summoned the jury," App'x at 214. In Hill's view, his dissatisfaction with appointed counsel, based on counsel's refusal to present motions addressing an interlocutory appeal or Speedy Trial violations, constituted a legitimate basis for his alleged loss of confidence and entitlement to new counsel. We disagree.

5

Under the Sixth Amendment, a criminal defendant is guaranteed the right to effective assistance of counsel. However, this right does not entitle a defendant to unlimited choice of counsel. *McKee v. Harris*, 649 F.2d 927, 931 (2d Cir. 1981) ("It is settled in this Circuit that once trial has begun a defendant does not have the unbridled right to reject assigned counsel and demand another." (citation modified)). Courts may impose "restraints . . . on the reassignment of counsel" to prevent manipulation of the judicial process. *Id.*

We review a court's refusal to appoint new counsel for abuse of discretion. *United States v. Jones*, 482 F.3d 60, 75 (2d Cir. 2006). To determine whether denial of substitution constitutes an abuse of discretion, courts consider four factors: (1) the timeliness of the request; (2) the adequacy of the district court's inquiry into the issue; (3) whether the conflict between attorney and client was so severe that it resulted in a total breakdown in communication preventing an adequate defense; and (4) whether the defendant substantially and unjustifiably contributed to that breakdown. *United States v. Rainford*, 110 F.4th 455, 471 (2d Cir. 2024). Importantly, a defendant cannot establish an actual conflict of interest merely by "expressing dissatisfaction with [the] attorney's performance." *United States v. John Doe No. 1*, 272 F.3d 116, 126 (2d Cir. 2001) (alteration in original) (internal quotation marks omitted).

Here, Kevin Henry, Hill's third court-appointed attorney, moved to withdraw on August 3, just eleven days before trial and a week after the final pretrial conference. Accompanying Henry's motion was a statement from Hill in which Hill requested that Henry "[f]ile [a] [m]otion to be relieved as my counsel," and declared, "I will be proceeding PRO SE representing myself." App'x at 260. At a hearing on the motion, Hill requested a fourth attorney, citing Henry's refusal to raise certain issues or file specific motions. Henry, for his part, acknowledged Hill's lack of

6

confidence but nevertheless affirmed his preparedness to try the case.

The district court denied the motion, observing that it did "not anticipate that [Hill's] experience with a fourth lawyer will be any different," as he "comes to distrust each lawyer the court appoints," and "appointing a new lawyer will derail the trial" and "lead to months of additional delay in a case which has been pending since March 2022." App'x at 262. The court also explained to Hill the risks and disadvantages of representing himself, and made efforts to "persuade Mr. Hill to accept representation from Mr. Henry, either as his counsel or as stand-by counsel." *Id*. As Hill rejected both options "on the eve of trial," the court described Hill as having "no practical alternative except self-representation." *Id*. As a failsafe, the court assured that "Mr. Henry will be available to step in and assist" should Hill change his mind concerning representation. *Id*.

These circumstances and the record as a whole do not support a finding of abuse of discretion. First, the timing of the motion, close to trial, favors denial. *See John Doe No. 1*, 272 F.3d at 123. Second, the court's inquiry into why Hill wanted a new lawyer "was not merely [] perfunctory" or "superficial," *id*. at 124, as it permitted Hill to explain his grievances, which centered on Hill's strategic disagreement with counsel rather than lack of preparation or zealous representation, *see United States v. Jones*, 482 F.3d 60, 75 (2d Cir. 2006) (explaining that disagreement over legal tactics is insufficient to give rise to an actual conflict).

The record does not support that communications between Hill and Henry had deteriorated to a point that Henry was no longer able to provide an adequate defense. Henry represented Hill for nearly a week after he moved to withdraw, filing a motion to bifurcate, a motion *in limine*, proposed jury instructions, and proposed voir dire questions. Moreover, Henry continued to meet

7

with Hill about his case and remained in the courtroom to assist him throughout the case even though he had been officially relieved. Based on these facts, we cannot say that the alleged conflict between Hill and Henry was so great that it resulted in a total lack of communication preventing an adequate defense. *John Doe No. 1*, 272 F.3d at 124.

Finally, as to whether Hill substantially and unjustifiably contributed to the alleged breakdown and whether the alleged irreconcilable differences can be largely attributable to Hill, the record similarly supports the district court's denial of substitution of counsel. The alleged "breakdown" stemmed from Hill's dissatisfaction with Henry's professional judgment, specifically his decision not to file certain motions, rather than any neglect or misconduct on Henry's part. "It was [thus] reasonable for the district court to conclude that [Hill] was the source of the breakdown in communications . . . and therefore that substitution of new counsel was unlikely to solve the problem." *Id.* at 125.

## III. Sufficiency of the *Faretta* colloquy

Hill argues that the district court's *Faretta* colloquy failed to determine whether he "could make an intelligent choice about proceeding unrepresented." Appellant's Br. at 52. To support this proposition, Hill cites various errors he made during trial, which, in his view, demonstrate his "obvious incompetence to represent himself." *Id.* at 52–53. For example, Hill maintains one such error was the fact that "two likely felons ended up being seated on his jury and the fact that his prior convictions were unnecessarily read to the jury." *Id*. at 53. Hill also takes issue with what he considers the court's failure to adequately explore his purported mental health issues. Hill's arguments are unpersuasive.

8

A criminal defendant has a constitutional right to waive representation and proceed pro se. *Faretta v. California*, 422 U.S. 806, 816 (1975). Before accepting such a waiver, the court must ensure that it is made "knowingly and intelligently." *United States v. Hausa*, 922 F.3d 129, 134 (2d Cir. 2019) (per curiam) (internal quotation marks omitted). Although there is no "talismanic procedure," the court should conduct an on-the-record colloquy to confirm that the defendant fully understands the consequences of waiving counsel. *Id.* at 134–35 (internal quotation marks omitted).

The district court's *Faretta* colloquy in this case was constitutionally adequate. After informing Hill that he "certainly [had] the right to represent [himself]," App'x at 223, the court asked a series of questions to assess his understanding of the legal system and criminal proceedings, the nature of the charges against him, and the potential penalties. It also advised him of the disadvantages of self-representation and the benefits of having a trained attorney. In a moment of candor, the court told Hill, "I'll put my cards on the table. I strongly urge you not to try to represent yourself and to go forward with your present counsel as your attorney." App'x at 231.

To the extent that Hill's challenge to the court's colloquy centers on the limited choice he faced—proceed with Henry or represent himself—such a contention does not render the *Faretta* inquiry constitutionally deficient. *See United States v. Schmidt*, 105 F.3d 82, 89 (2d Cir. 1997) (holding that a defendant was not impermissibly forced to proceed pro se merely because the court declined to appoint new counsel on the eve of trial); *United States v. Culbertson*, 670 F.3d 183, 193 (2d Cir. 2012) (explaining that where the court has already replaced counsel multiple times, it may reasonably require the defendant "either to proceed with the current appointed lawyer, or to

9

proceed pro se"). As discussed above, the district court's refusal to appoint substitute counsel fell squarely within its discretion.

Finally, Hill's contention that the district court erred by failing to inquire into his mental health during the colloquy is belied by the record. Specifically, Hill asserts that "[a]t no time during the hearing did the court attempt to ascertain [his] competence or mental health, even though [he] was clearly agitated and continually raised his concerns about the unfairness of the proceeding, as well as references to God being his attorney." Appellant's Br. at 50.

The district court, however, directly addressed this issue, noting that it had "spent more time in direct, unfiltered conversation with Mr. Hill than with any other defendant over the course of the last 10 years." App'x at 411. It found him to be courteous and capable of grasping legal concepts, with no signs of delusion or impaired behavior. *Id*. His references to divine assistance were interpreted as expressions of religious faith rather than indicators of mental illness. *See id*. Based on these observations, both before and during trial, the district court concluded that Hill was competent to represent himself and to mount a defense. *Id*. We generally uphold factual findings unless clearly erroneous, and this finding, based on extensive and direct observations, was not clearly erroneous, *see United States v. Oliver*, 626 F.2d 254, 258–59 (2d Cir. 1980) (upholding competency determination based solely on the trial court's observations); *see also Ceraso v. Motiva Enters., LLC*, 326 F.3d 303, 316 (2d Cir. 2003) ("In reviewing findings for clear error, we are not allowed to second-guess [] the trial court's credibility assessments.").

## IV. Sufficiency of Special Verdict for Count Three

Hill challenges the sufficiency of the government's evidence supporting the special verdict under Count Three, pertaining to the amount of drugs he possessed. He specifically disputes the

credibility and methodology of the DEA chemists who testified that he possessed fifty grams or more of pure methamphetamine—an amount that triggers the mandatory minimum sentence of ten years under 21 U.S.C. § 841(b)(1)(A)(viii). His challenge to the special verdict is unavailing.

Count Three charged a single offense under 21 U.S.C. § 841(a), supported by two alternative factual theories: possession of 500 grams of a methamphetamine mixture or possession of 50 grams of pure methamphetamine. Hill was convicted of possessing both 500 grams of a methamphetamine mixture and 50 grams of pure methamphetamine. Critically, proof of either quantity is sufficient to support the mandatory minimum for Count Three.

In its brief, the government asserts that Hill challenges only the sufficiency of the 50-gram pure methamphetamine finding, and Hill does not contest that characterization in his reply. Thus, the sufficiency of the finding of possession of 500 grams of a methamphetamine mixture is not in dispute. A "verdict should be affirmed" so long as it rests on at least one factually sufficient theory of liability, even if another theory is unsupported. *United States v. Johnson*, 945 F.3d 606, 612 (2d Cir. 2019) ("'[W]hen two theories of an offense are submitted to the jury and the evidence supports one theory but not the other,' the verdict should be affirmed." (quoting *United States v. Rutkoske*, 506 F.3d 170, 176 (2d Cir. 2007))).

Accordingly, even if the DEA chemists' testimony were deemed insufficient as to the 50-gram pure methamphetamine finding, the outcome remains unchanged due to the jury's finding as to the 500-gram methamphetamine mixture offense.

## V. Pro Se Claims in Supplemental Briefing

Hill raises two additional challenges in supplemental briefing. First, Hill argues that the district court abused its discretion by denying his motion for a mental health evaluation. Second,

11

Hill challenges the district court's denial of his motion under *Brady v. Maryland*, 373 U.S. 83 (1963), seeking phone records of the confidential informant and body camera footage from searches executed in his hotel room, storage unit, and vehicle, and arguing that such evidence would have demonstrated that his property was illegally searched and seized. Both challenges lack merit.

As to the mental health evaluation, Hill filed a pro se motion four days before trial requesting a mental health evaluation. He argued that his personal history as an adopted person may have led to long-term, untreated mental health issues; that he had been told he exhibited symptoms of post-traumatic stress disorder; that two immediate family members had died during the COVID-19 pandemic; and that his mental health had been adversely affected by his conditions of confinement.

The district court denied the motion, explaining that mental health evaluations are appropriate only to assess competency or to support a potential insanity defense, neither of which was at issue in Hill's case. Hill now contends this was an abuse of discretion, arguing that an evaluation was warranted because he asserted a diminished capacity defense and claimed his mental health conditions impaired his ability to represent himself. We disagree.

As with Hill's mental health challenge to the *Faretta* colloquy, the district court acted well within its discretion in denying his motion. The court observed no symptoms suggesting Hill was incompetent to stand trial or assist in his defense, and the record contains no evidence that he suffered from a severe mental disease or defect at the time of the offense conduct. *See United States v. Arenburg*, 605 F.3d 164, 169 (2d Cir. 2010) (explaining that a competency evaluation is appropriate only if "reasonable cause" exists to believe the defendant may be incompetent); *see*

12

*also* 18 U.S.C. § 17(a) (explaining that insanity defense requires proof that, "as a result of a severe mental disease or defect, [the defendant] was unable to appreciate the nature and quality or the wrongfulness of his acts").

Concerning Hill's *Brady* motion, the district court denied the motion on the record, reasoning that it was satisfied with the government's representation that it had turned over the body camera footage and that it did not have the phone records. Hill now challenges this denial, arguing that the *Brady* materials he sought would have demonstrated that his property was illegally searched and seized, and that the district court should have granted him an extension of time to review the *Brady* materials. Hill's challenge is unavailing.

The government cannot be compelled to produce materials it does not possess, and Hill offered no evidence to contradict the government's denial of possession. *See* Fed. R. Crim. P. 16(a)(1)(E) ("[T]he government must permit the defendant to inspect . . . [materials], if the item is within the government's possession, custody, or control."); *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) ("The *Brady* obligation extends only to material evidence . . . that is known to the prosecutor."). The record confirms that all existing body-camera footage was disclosed well in advance of trial, and a government witness testified that no footage of the vehicle search existed. The district court acted well within its discretion in denying the motion.

        \*        \*        \*

We have considered Hill's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court